UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MACHELL SHERLES,

                Plaintiff,

    v.

JOANN FOX,

                Defendant.

Case No. C18-0016-MAT

ORDER RE:  MOTION TO DISMISS
OR TRANSFER AND REQUEST FOR
SUMMARY JUDGMENT

## INTRODUCTION

Defendant JoAnn Fox moves to dismiss this matter under Federal Rule of Civil Procedure 12(b) due to lack of personal jurisdiction and improper venue. (Dkt. 21.)  Defendant alternatively requests transfer to the United States District Court, Southern District of New York.  Plaintiff objects to defendant's motion and requests that the Court *sua sponte* grant summary judgment on one issue and leave only the issue of damages for trial. (Dkt. 23.)  Defendant opposes summary judgment. (Dkt. 25.)  The Court herein finds no basis to dismiss or transfer, or to consider summary judgment at this juncture.

## BACKGROUND

Ann Rule, an author of true crime books and a Washington resident, died on July 26, 2015. At the time of her death, Rule's copyrights passed to her probate estate, including fifty-four

ORDER - 1

registered copyrighted works, a number of which remain in print and are sold under license to major publishing houses. (*See* Dkt. 1, ¶5.) Plaintiff Machell Sherles is the Successor Executor and Trustee in the Estate of Ann Rule ("Rule Estate"), a Washington probate case.

Joan Foley, doing business as The Foley Agency (or "agency") and acting through an oral agreement, served as Rule's literary agent for more than thirty years. Foley and her agency negotiated publishing and other projects on Rule's behalf. The publishing agreements are in and signed with Rule's name, list The Foley Agency as her agent, and direct all monies due the author to be paid to the agency at 34 East 38th Street, Apt. 1B, New York, New York 10016 (hereinafter the "38th Street Apt."). (*See*, *e.g.*, Dkt. 22, Exs. 4-8.) Foley deducted a ten percent agency fee and sent the remaining ninety percent of royalties to "Rule Enterprises, Inc.", a Washington Corporation. After Rule's death, Foley was expected to send the ninety percent to the Rule Estate.

Foley died on March 30, 2016. The probate proceedings filed in the Foley Probate Estate reflect her domicile as the 38th Street Apt. (Dkt. 23, Ex. A.) However, while she lived and did business at the 38th Street Apt. for many years, Foley resided in Florida at the time of her death. The Foley Agency is not identified as an asset of the Foley Probate Estate. (*Id*. at 3.)

Defendant JoAnn Fox is a resident of Florida. Fox met Foley in 2005 and became her landlord in 2007, when Fox purchased the 38th Street Apt. (Dkt. 18, Ex. D.) Fox asserts she became a literary agent and partner in The Foley Agency in 2015, after the death of Foley's husband, and signed a partnership agreement to that effect, and became the sole owner of the agency upon Foley's death. (Dkt. 22, ¶¶2-3, 6.) The agency and/or Fox continued to receive royalty payments after the deaths of Rule and Foley. (*See*, *e.g.*, Dkt. 1, Ex. C and Dkt. 23, Ex. E.)

Plaintiff filed suit in January 2018, seeking a declaratory judgment that any agency agreement terminated on the death of Rule; damages under the Lanham Act for misrepresentation

of fact as to an agency relationship; damages under the Washington Consumer Protection Act; and for an accounting of royalties received from publishers after Rule's death. (Dkt. 1.) Plaintiff named Fox as the president of the agency in the complaint and, while noting the absence of any documentation of a partnership between Foley and Fox, accepts Fox's assertion as to her ownership of the agency for the purpose of responding to the motion to dismiss.[1]

Plaintiff avers that while the agency is *de jure*, its telephone number has been disconnected and Fox resides in Florida, and that the agency is no longer an operating, *de facto*, entity and no longer performing any functions as a literary agent. (*Id.*, ¶12.) Plaintiff further avers the publishers subject to agreements with Rule are now withholding payment of all or some of the royalties due based on the conflict between the Rule Estate and Fox. (*Id.*, ¶13 and Ex. C.) The Estate has engaged new literary agents. (*Id.*, ¶15.)

DISCUSSION

Defendant moves to dismiss based on an absence of personal jurisdiction and improper venue, or to transfer venue. Plaintiff argues defendant's motion should be denied and summary judgment granted, *sua sponte*, on the issue of the termination of the oral agency agreement between Rule and Foley, leaving only the issue of damages for trial.

A.    Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction over defendant. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Where, as here, the Court

---

[1] Plaintiff originally named "Foley Agency, Inc." as a defendant based, at least in part, on a corporation information record filed in New York State. (Dkt. 1, Ex. B and Dkt. 17 at 2.) The record lists Fox as the Chief Executive Officer of Foley Agency, Inc. and the address for both that entity and Fox as the 38th Street Apt. (Dkt. 1, Ex. B.) The Court dismissed Foley Agency, Inc., on plaintiff's motion, given the determination it is an insurance business operating in Webster, New York, not a literary agency associated with Fox or based in New York City. (Dkts. 17-20.)

resolves the motion on written materials, rather than holding an evidentiary hearing, plaintiff "need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id*. *Accord Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). "'That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.'" *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). Although plaintiff may not rely solely on the bare allegations in the complaint, uncontroverted allegations must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). Any factual disputes are resolved in plaintiff's favor. *Id*. A*ccord Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

The exercise of personal jurisdiction over a nonresident defendant requires both the satisfaction of the requirements of the forum state's long-arm statute, and the requirements of federal due process. *Chan v. Society Expeditions*, 39 F.3d 1398, 1404-05 (9th Cir. 1994). Washington's long-arm statute confers personal jurisdiction to the extent due process allows. *Id*. at 1405. Because Washington's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. *Schwarzenegger*, 374 F.3d at 800-01. *Accord IP Innovation, L.L.C. v. RealNetworks, Inc.*, 310 F. Supp. 2d 1209, 1212 (W.D. Wash. 2004) (citing, *inter alia*, *Chan*, 39 F.3d at 1405 and Wash. Rev. Code § 4.28.185). Satisfaction of due process occurs when a nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation marks and quoted sources omitted). Personal jurisdiction may be either general or specific. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *holding modified on other grounds as*

*explained in Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206-07 (9th Cir. 2006).

Defendant denies the existence of either general or specific personal jurisdiction, while plaintiff asserts no need to address general jurisdiction given that specific jurisdiction exists. The Court finds it prudent to begin with an assessment of specific jurisdiction.

Specific jurisdiction requires a showing the nonresident defendant purposefully established significant contacts with the forum state, and that the cause of action arises out of or is related to the defendant's forum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-73 (1985). In the Ninth Circuit, courts analyze specific jurisdiction under a three-part test

> (1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo, Inc.*, 647 F.3d at 1227-28 (cited sources omitted; emphasis retained). Plaintiff bears the burden of satisfying the first two steps and, if successful, the burden shifts to defendant to set forth a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* at 1228 (quoting *Burger King Corp.*, 471 U.S. at 476-78).

1. Purposeful Availment/Direction:

The first prong in the specific jurisdiction analysis "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc.*, 433 F.3d at 1206. Typically, courts consider purposeful availment in suits sounding primarily in contract, and purposeful direction in suits sounding primarily in tort. *Schwarzenegger*, 374 F.3d at 802. *See also Boschetto v. Hansing*, 539 F.3d 1011, 1016-19 (9th Cir. 2008); *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions *in* the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802 (emphasis added). By taking such actions, a defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws[,]'" *id.* (quoting *Hansen v. Denckla*, 357 U.S. 235, 253 (1958)), such that the defendant should reasonably anticipate being haled into court there, *Harris Rutsky & Co. Ins. Svcs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This requirement "ensures that a nonresident defendant will not be haled into court based upon random, fortuitous, or attenuated contacts with the forum state." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citing *Burger King Corp.*, 471 U.S. at 475).

"A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions *outside* the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803 (emphasis added). Purposeful direction allows a defendant to be haled into the forum notwithstanding a lack of any physical contacts with the forum, and provides for "'jurisdiction over a defendant whose only "contact" with the forum state is the "purposeful direction" of a *foreign* act having *effect* in the forum state.'" *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993) (quoting *Haisten v. Grass Valley Medical Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir. 1986)) (emphasis retained). In considering purposeful direction, courts in the Ninth Circuit apply a three-part "effects" test, based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), and requiring that the defendant

allegedly "'(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Yahoo! Inc.*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 803).

Plaintiff argues satisfaction of the purposeful availment and purposeful direction tests. (*See* Dkt. 23 at 7-9.)[2] Defendant asserts purposeful availment is properly considered given that all of plaintiff's claims relate back to the oral contract between Rule and The Foley Agency. She avers the tort claim of misrepresentation merely springs from whatever determination the Court may make with regard to the existence of a contract, and notes the existence of that contract is a defense to the tort alleged. Defendant also suggests plaintiff does not allege an intentional tort that could satisfy the purposeful direction effects test, *see Rosenberg v. Seattle Art Museum*, 42 F. Supp. 2d 1029, 1037-38 & n.8 (W.D. Wash. 1999), and, instead, alleges only negligent misrepresentation.

Defendant denies purposeful availment, contending neither she, nor the agency initiated purposeful contact with Washington State. She asserts the formation, execution, and fulfillment of the agency agreement took place in New York, that all business for the agency has been and is conducted in New York, and that the publishing agreements were negotiated in New York, with book publishers located in New York and outside the United States. (Dkt. 22, ¶6 and Exs. 4-8.) Royalties were received in New York and any accounting for royalties paid by the publishers were sent by the agency in New York. Defendant expresses her understanding that Rule traveled to New York to meet with Foley regarding Rule's literary works and their exploitation, and that Foley would take Rule to luncheons and dinners. (*Id.*, ¶5.) She denies the existence of any evidence showing she or her predecessors at the agency ever travelled to Washington, that any advertising

---

[2] Defendant construes plaintiff's opposition as agreeing the "purposeful availment" test applies. (*See* Dkt. 23 at 6.) However, plaintiff argues both purposeful direction and availment. (*Id.* at 8-9.)

for the agency occurring on a national level could have reached Rule, or that the agency affirmatively solicited the agency relationship with Rule in Washington.

Defendant further denies the relevance of where the literary works were created or where the intellectual property rights reside, and contends any phone calls, letters, and payments sent to Washington are merely "attenuated contacts" insufficient to establish the agency purposefully availed itself of the forum's laws. *See Rosenberg*, 42 F. Supp. 2d at 1034 (neither the mailing of two letters to finalize a sale of a painting, nor the fact the painting was taken into possession in Washington constituted solicitation of a transaction: "The transaction at issue was already in the works – the letters were intended to compete, not solicit, the transaction.") (citing, *inter alia, Gray & Co v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 760-61 (9th Cir. 1990) (in a contract action, contacts with forum consisting of phone calls, letters, and receipt of payment regarding transaction initiated by plaintiff "fall in the category of 'attenuated contacts' insufficient in themselves to establish defendants have purposefully availed themselves of the benefits and protections of the forum's law.")). She also denies any significance of where Rule signed publishing agreements, stating, "but for the author's final review and signature, all negotiations on behalf of the author (e.g., the crux of the literary agency services rendered) took place in New York." (Dkt. 25 at 4.)

This case sounds in both contract and tort. However, plaintiff does not allege a tort arising out of or derived from a contractual agreement with defendant. Plaintiff denies a contract with defendant exists and seeks a declaratory judgment on that point. The remainder of her claims sound in tort. Plaintiff avers defendant has and continues to represent to the publishers of Rule's books that The Foley Agency and/or Fox are the literary agents of Rule and entitled to receive royalties from the sale of her books; that such acts constitute misrepresentation of facts that has and will lead to a likelihood of confusion, mistake, or deceit as to agency representation in violation

of Section 43(a) of the Lanham Act; and that plaintiff has and continues to be irreparably injured as a result of such acts, entitling plaintiff to a permanent injunction. (Dkt. 1, ¶¶21-23.) Plaintiff does not specify whether defendant's communications with the publishing houses amount to intentional or negligent misrepresentation. (*See id*. and Dkt. 23 at 9.) Plaintiff also alleges defendant's acts constitute unfair methods of competition and unfair or deceptive acts or practices under the Washington Consumer Protection Act, and seeks an accounting of all royalties received and all agency fees retained on or after Rule's death as damages. (Dkt. 1, ¶¶24-33.) The Court, as such, disagrees with defendant that this matter is properly considered solely with consideration of purposeful availment.

The Court further disagrees with defendant's depiction of the evidence of contacts with the forum state. There is no dispute Foley and the agency undertook activities in New York on behalf of Rule, including negotiations and other contacts with publishing agencies, in addition to the receipt and accounting of royalties obtained through the publishing agreements. Yet, no evidence is provided to support the contention Foley and Rule entered into an agency agreement in New York or that all business conducted on behalf of Rule took place in New York. Both Rule and Foley are unable to provide information because they are deceased. Defendant, by her own admission, met Foley long after Foley entered into an agency agreement with Rule, and lacks sufficient knowledge as to Foley's contact with or travel to Washington. Nor does it appear defendant has any direct knowledge regarding the publishing agreements. She provides examples of agreements dated between 1983 and 1992 (Dkt. 22, Exs. 4-8), many years before she met Foley in 2005 and her 2015 start as a literary agent. Her "understanding" as to Rule's activities in New York lacks any support or explanation as to the basis for that understanding. (*See* Dkt. 22, ¶5.)

There is, moreover, no reasonable basis for rejecting plaintiff's allegation Foley and the

agency necessarily and continuously had contact with Rule in Washington, where Rule resided and worked,[3] over the course of their decades-long business relationship. The contact presumably included, at a minimum, anything necessary to the process of negotiating and finalizing the more than seventy-two publishing agreements entered into by Rule (*see* Dkt. 23 at 6) and the forwarding of royalties received and accounting for royalties paid. As described by plaintiff and the current literary agent for the Estate:

> Negotiations for new contracts may take weeks or months to complete. Agreements are passed back and forth to refine terms and language in the agreement, then it is passed along to the publisher and other executives at the publishing house who have to sign-off on the final terms negotiated by Joan Foley and the publisher's legal team, usually via the editor. The approved contract is then sent first to the author to sign, then returned to the publisher to sign. . . . All of these services require constant personal communication with the client, written and oral. New agreements and modifications must be submitted to the client for signature, as, after all, the publishing agreements are between the author and the publisher; the agent is not a party to the agreement.

(Dkt. 24, ¶¶10-11; *accord* Dkt. 23 at 6.) As with her assertion as to acts undertaken in New York, defendant's depiction of contacts with Rule in Washington as merely attenuated and incidental to Foley's primary activities is conjectural and unsupported.

Plaintiff also provides evidence of conduct defendant Fox directed toward the forum state. In a December 16, 2016 email, Fox instructed the publisher Simon & Schuster to continue to make all payments to The Foley Agency, advised that she and the agency would continue to make payments to Ann Rule Enterprises, and stated: "For your confirmation, since the death of Ann Rule last summer, we have been in constant communication with the Estate of Ann Rule and all

---

[3] Defendant asserts an absence of evidence Rule created her literary works in Washington and provides a printout from a website as showing Rule spent substantial time elsewhere. (Dkt. 25 at 6 and Ex. A.) While the document does reflect that Rule traveled, including going on one book tour every year, it also supports the conclusion she spent significant periods of time at home, at her desk, writing her books. (*See id.*, Ex. A.)

funds have been paid in full." (Dkt. 1, Ex. C at 1 and Dkt. 23, Ex. D.)  (*See also* Dkt. 23, Ex. E (March 15, 2017 letter to an attorney stating records would confirm the consistent history of payments from the agency to Ann Rule Enterprises, and promising to continue to send all monies due to the Estate)).

The mere existence of a contract with a resident of the forum state does not suffice to confer specific jurisdiction over a nonresident.  *Burger King*, 471 U.S. at 478.  It is also true that, "ordinarily, use of the mails, telephone, or other . . . communications simply do not qualify as purposeful activity invoking the benefits and protections of the [forum] state." *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (internal quotation marks and quoted sources omitted). However, both "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 478. Ultimately, "'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.'" *Roth*, 942 F.2d at 621 (quoting *Burger King*, 471 U.S. at 473) (other internal quotation marks and quoted source omitted).

Resolving all factual disputes in plaintiff's favor, as required, the Court finds a prima facie showing of jurisdictional facts sufficient to withstand defendant's motion to dismiss.  Although the location, nature, and extent of all contacts and activities remain unclear, the existing evidence supports the conclusion Foley and The Foley Agency continuously and over a lengthy period of time purposefully availed themselves of the privilege of doing business in Washington, and could reasonably anticipate being haled into court in Washington as a result of their activities.  This is not a case in which a defendant engaged in finite, minimal contact with the forum.  *See, e.g.*,

*Rosenberg*, 42 F. Supp. 2d at 1034 (mailing two letters to forum state). Nor were the contacts merely random, fortuitous, or attenuated. In entering into an agency relationship with Rule, Foley and the agency contemplated significant future consequences in Washington and committed themselves to ongoing obligations with a citizen of Washington. The continuation of those obligations over the course of decades and through the negotiation and finalization of seventy-two publishing agreements supports a finding of purposeful availment.

The evidence also shows defendant Fox purposefully directed conduct toward the forum. Specific jurisdiction is provided for through the allegation Fox misrepresented her entitlement to agency fees and collected those fees at the expense of and causing harm to the Rule Estate in Washington. The issue is not where Fox directed any letters or other communications. The critical factor is that the conduct targeted plaintiff, whom Fox knew to be in Washington. *See, e.g., Bancroft & Masters, Inc.*, 223 F.3d at 1087 (explaining that the "'express aiming'" element of the effects test is "satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.") (citing *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990) (under *Calder*, 465 U.S. 783, "it was irrelevant where [a] letter was sent. The critical factor was that in sending the letter, the defendant 'was purposely defrauding [plaintiff] in [the forum state]."")) *See also Rosenberg*, 42 F. Supp. 2d at 1037 (specific jurisdiction established with allegation defendant intentionally lied to plaintiffs, residents of Washington, knowing that if plaintiffs acted on those lies, they would suffer injury within Washington). Plaintiff satisfies the first prong of the specific jurisdiction test.

2. <u>Arising Out of Forum-Related Activities</u>:

The second prong of the jurisdictional test requires that a claim arises out of or relates to the defendant's forum-related activities. *Mavrix Photo, Inc.*, 647 F.3d at 1227-28. The Court

employs a "but for" test of causation. *Id.* The relatedness requirement is met if the cause of action would not have arisen but for the alleged contacts between defendant and the forum state.

In this case, but for defendant's alleged misrepresentations as to the continuation of the agency relationship, there would be no dispute as to the distribution of royalties from Rule's works and arguably no need for a declaration denying the existence of an agency relationship with defendant. The damages sustained and the need for the declaration otherwise necessarily relate to the prior agency relationship between Rule and Foley/The Foley Agency, and the numerous publishing agreements entered into through activities undertaken by Foley and the agency in the forum. The second prong of the jurisdictional test is satisfied.

3. <u>Reasonableness</u>:

The final requirement for specific jurisdiction is reasonableness. Courts in the Ninth Circuit consider a number of factors in determining whether the exercise of jurisdiction would be reasonable:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) (quoted source omitted). Because no single factor is dispositive, courts balance all seven. *Roth*, 942 F.2d at 623.

Defendant reiterates her assertions as to the contacts and activities of all relevant persons and entities, and maintains it is clear neither she, nor The Foley Agency purposefully injected themselves into affairs in Washington. She identifies an alternative forum in New York, where the agency continues to conduct its business and most publishers who sold Rule's work and are

currently withholding royalty payments are located.  Defendant may, under New York law, bring a claim for enforcement of the agency's rights under some of the publishing agreements as a third-party beneficiary, allowing for or forcing the joinder of the publishers as parties due to their refusal to issue royalty payments and through the forum selection clauses in the agreements.  Defendant argues New York would provide the most efficient, convenient, and effective relief, and that it would not be reasonable to subject defendant to the jurisdiction of this Court for merely negligent acts.  *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977) ("it may be unreasonable to subject an out-of-state defendant to jurisdiction where the allegedly tortious act is committed outside of the forum state, having only an effect within the state, if the act is negligent rather than purposeful.")

Having already found purposeful availment and direction, the Court need not again consider the extent of defendant's purposeful injection into Washington affairs.  *Roth*, 942 F.2d at 623.  Also, and as stated above, plaintiff does not specify an allegation of only negligent acts.  It is further apparent Washington has an interest in adjudicating a dispute brought by the executor of a Washington probate matter, and that plaintiff has a clear preference for obtaining relief in the state of her residence and the location of the Rule Estate.  Each of these factors supports the reasonableness of exercising jurisdiction in Washington.

The remaining factors do not weigh strongly in favor of either side.  Defendant is a resident of Florida and spends only a portion of her time in New York.  (*See* Dkt. 22, ¶2 (approximately sixty percent of her time is spent in New York); Dkt. 26, ¶3 (she spends about ten days a month at the 38th St. Apt., but anticipates spending more time there starting May 2018 and spent almost eight months there in 2017).)[4]  Litigation in New York would impose a "corresponding burden"

---

[4] Plaintiff raises questions as to what business, if any, Fox conducts in New York.  (*See* Dkts. 17 &

on plaintiff, and advances in communication and transportation have reduced the burden of cross-country litigation.  *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988).  Because any inconvenience to defendant is not "'so great as to constitute a deprivation of due process," it does not "'overcome clear justifications for the exercise of jurisdiction.'"  *Roth*, 942 F.2d at 623 (quoting *Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474, 1482 (9th Cir. 1986)).  Because pertinent evidence and witnesses are likely to be found in multiple locales, including New York, Washington, and Florida, it is not clear a particular forum provides any marked efficiency over another.  Finally, "[b]ecause the alternative forums are within the United States, any conflicting sovereignty interests are best accommodated through choice-of-law rules rather than jurisdictional rules."  *Gray & Co.*, 913 F.2d at 761 (citing *Hirsch*, 800 F.2d at 1482).

Upon balancing the necessary factors, the Court concludes an exercise of jurisdiction over defendant would be reasonable.  Having found all three requirements for specific jurisdiction satisfied, the Court need not consider general jurisdiction.

B.    Venue

Defendant moves to dismiss based on improper venue.  Alternatively, defendant seeks to transfer venue to the Southern District of New York.  The Court considers those requests in turn.

1.    Proper Venue:

The parties agree the Court properly considers where venue may lie pursuant to 28 U.S.C. § 1391(b)(2).  Under that provision, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"  § 1391(b)(2).[5]

---

23; *but see* Dkt. 25 at 6-7.)  The Court need not address this issue in order to determine specific jurisdiction.

[5] This statute also provides for venue in the judicial district where defendants reside or "if there is

Defendant argues that, because plaintiff seeks a declaratory judgment associated with the literary agency contract between Rule and The Foley Agency, the formation, execution, and enforcement of the agency agreement should be the focus of the Court in determining venue. *See AlixPartners, LLP v. Brewington*, 133 F. Supp. 3d 947, 961 (E.D. Mich. 2015). She asserts substantially all events giving rise to plaintiff's claims occurred in New York, including meetings between Rule and the agency maintaining the agency agreement and the negotiation of the publishing agreements. Defendant points to New York as containing substantially all property subject to this action. She states that royalties and advances from the publishing agreements were received by the agency's New York bank account (*see* Dkt. 22, ¶4 and Ex. 2), and that most of the publishers continuing to hold royalties are located in New York. She denies the relevance of where the literary works were produced or where the intellectual property is held. *See Bassili v. Chu*, 242 F. Supp. 2d 223, 231-32 (W.D.N.Y. 2002) (rejecting venue in a district where products subject to a Lanham Act product disparagement action were located, but where neither party resided) (citing *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (venue of Lanham Act claim improper based solely on location of ultimate effect of the violation)). *See also supra* n.3.

In considering defendant's Rule 12(b)(3) motion to dismiss based on improper venue, the Court must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2003). The chosen venue need not be the best venue; it need only qualify as a proper venue. *Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262, 1269 (W.D. Wash. 2005).

no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1) and (3). Defendant resides in Florida and neither party seeks venue in that state. While the Court does find personal jurisdiction in Washington, it need not address § 1391(b)(3) if venue properly lies in this district pursuant to § 1391(b)(2).

Again, this matter is not limited to plaintiff's request for a declaratory judgment regarding the agency agreement and includes the allegation defendant misrepresented the continued existence of that agreement. Neither party presents evidence showing where defendant was located when she made the alleged misrepresentations.[6] With actions sounding in tort, the locus of injury is relevant to the determination of venue. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001). Plaintiff here alleges harm, suffered in Washington, through the withholding of royalty payments due the Rule Estate as a result of defendant's tortious conduct. Because a substantial part of events giving rise to the claim occurred in Washington, venue is proper in this district. *Id.*

A focus on the contract claim does not alter that conclusion. There is no evidence showing where Rule and Foley entered into an oral agency agreement, and no explanation as to why a declaratory judgment as to the termination of that agreement would be contingent on where they maintained their agency relationship or where the publishing agreements were negotiated. Defendant here alleges the agency agreement terminated on the death of Ann Rule, an event that occurred in Washington (*see* Dkt. 23 at 11). Also, while some of the publishing agreements are with publishing agencies based in New York, defendant is not a party to those agreements (*see* Dkt. 22, Exs. 4-8), and their content is not directly in dispute. To the extent defendant suggests The Foley Agency may counterclaim for breach of contract and seek to enforce its right as a third-party beneficiary under certain publishing agreements, no such claim exists at present.

Royalties owed through the publishing agreements are at issue and at least some are held by agencies based in New York. (Dkt. 1, Ex. C.) However, the royalties are attributable to Rule,

---

[6] The December 2016 email from Fox to Simon & Schuster directs inquiries to the 38th Street Apt., but was sent from Fox's personal email address, with a copy sent to the company email address. (Dkt. 1, Ex. C.)

a Washington resident, her literary works, and the intellectual property rights associated with those works and held in this State. It can, therefore, fairly be said that a substantial part of the property that is the subject of this action is in Washington. The Court finds venue properly situated in this district.

2. <u>Transfer of Venue</u>:

Even if finding venue proper, a court has discretion to transfer a case to another district pursuant to 28 U.S.C. § 1404(a). That statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." § 1404(a). The parties do not here dispute whether this case could have been brought in defendant's preferred forum. The parties contest and the Court herein addresses whether the interests of the parties, witnesses, and justice favor transfer.

The Court conducts "'an individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoted source omitted). Courts in the Ninth Circuit weigh a variety of factors in considering a transfer of venue:

> For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99. The presence of a forum selection clause and the relevant public policy of the forum state are also significant factors in the § 1404(a) analysis. *Id.* "There is a strong presumption in favor of the plaintiff's choice of forum which must be taken into account when deciding whether transfer is warranted." *Authentify Patent Co., LLC v. Strikeforce Techs., Inc.*, 39 F. Supp. 3d 1135,

1148 (W.D. Wash. 2014); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) (a plaintiff's choice of forum is entitled to greater deference when a plaintiff chooses its home forum). Defendant bears the burden to show transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

Defendant points to forum selection clauses in some publishing agreements in which Rule consented to venue in New York. She argues it would be more convenient for depositions and testimony of parties and witnesses to have this case tried in New York, where most of the publishers are based and where she spends the majority of her time. She also argues both convenience and fairness warrant a transfer given that The Foley Agency conducted all of its business operations in New York and because all of the agency business records and most publishing-related documents are located in that state.

Plaintiff does not name any party to the publishing agreements as a defendant and raises claims only indirectly related to those agreements. Neither the location of the negotiation and execution of the publishing agreements, the content of those agreements, nor the mere possibility of a third party beneficiary counterclaim justify a transfer of venue. Defendant further fails to show matters of convenience and fairness override the deference due plaintiff's choice of forum. The extent of Rule's and Foley's contacts with New York and Washington remains unclear, and defendant admittedly spends a significant amount of her time outside of her preferred forum. The parties otherwise present conflicting positions as to cost and convenience, including the existence of witnesses to be compelled, the location of relevant documents, and any remaining business operations of The Foley Agency. On balance, the factors addressed by the parties and pertinent to the Court's inquiry do not warrant transfer of venue to the Southern District of New York.

/ / /

C.    <u>Summary Judgment</u>

Plaintiff asks that the Court enter summary judgment, *sua sponte*, on the issue of the termination of the oral agency of Foley and Rule (and now defendant and plaintiff) and with the direction that royalties payable under the publishing agreements are to be paid to the Rule Estate. (Dkt. 23 at 12-16.)  For the reasons set forth below, the Court herein declines to either consider the specific arguments raised in support of summary judgment or to grant the request.

As defendant observes, plaintiff failed to comply with the Local Civil Rules (LCR). Plaintiff submitted the request in a responsive brief, instead of properly noting a motion for summary judgment, accompanied by a proposed order, in accordance with LCR 7(b)(1) and (d)(3). In so doing, plaintiff deprived defendant of the multiple weeks the Court's rules provide for the preparation and submission of a responsive brief, and allowed for a mere four days to respond to the motion and supportive declaration.  Plaintiff's failure to comply with the Court's rules is insufficiently explained and not justified.

The request for summary judgment is also premature.  Defendant has not yet submitted an answer to the complaint and the discovery deadline is set for October 1, 2018.  The parties present different positions as to the law and it does not appear all of the facts pertinent to a decision on the merits have been fully developed.

The Court, in sum, declines to address plaintiff's request for summary judgment at this juncture.  The denial of the request is without prejudice to plaintiff's re-filing of a motion for summary judgment at an appropriate time and with full compliance with the applicable rules.

<u>CONCLUSION</u>

Defendant's motion to dismiss or transfer this matter (Dkt. 21) is DENIED.  The Court also DENIES plaintiff's request for summary judgment (Dkt. 23), without prejudice to re-filing at an

appropriate time and pursuant to the Court's rules.  The Clerk is directed to send a copy of this

Order to the parties.

DATED this <u>20th</u> day of June, 2018.

Mary Alice Theiler
United States Magistrate Judge